IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DONNIE EUGENE BURCH o/b/o )
RENA BURCH, )
 )
       Plaintiff, )
 )
vs. ) Case No. 10-3213-CV-S-ODS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security. )
 )

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Donnie Burch's request for review of the final decision of the Commissioner of Social Security denying his late wife's applications for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Ms. Burch was born in May 1970, received her GED, and has prior work experience as a nurse's assistant, a cook's assistant, a cashier, a housekeeper, and a pizza deliverer. She filed her claims on May 4, 2006, alleging a disability onset date of December 31, 2003, due to a combination of diabetes, pain, asthma, and obesity.[1]

The ALJ found Ms. Burch's diabetes was controlled when she complied with the treatment prescribed by her doctors. The ALJ further found that Ms. Burch did not suffer from any diabetes-related limitations. This aspect of the ALJ's decision is not challenged and need not be discussed further.

---

[1]Ms. Burch's insured status expired on September 30, 2005, so she would have needed to have been disabled on or before that date to qualify for benefits under Title II. The expiration of insured status has no effect on her eligibility for benefits under Title XVI.

In June 2005 Ms. Burch complained of hip pain. An MRI revealed mild degenerative changes at L4-L5 and L5-S1, but no significant narrowing of the spinal canal or disk herniation. R. at 140-41. An x-ray of her knee revealed nothing of note. R. at 132. In September 2005 Ms. Burch reported falling out of her bed. Examination revealed "[s]ome degenerative disease of the thoracic spine" but nothing else of note. R. at 113. In February 2006, Ms. Burch went to the Southwest Spine and Sports Clinic. Dr. Boyd Crockett reviewed the MRIs and x-rays from 2005 and recommended some additional tests and "possibly . . . an SI joint injection and therapy for sacral stabilization." R. at 179-82. She received an injection in March 2006. R. at 283-84. An MRI in May 2006 revealed no change from June 2005. R. at 269.

In December 2007, Ms. Burch's then-treating doctor, Dr. Randy Curl, noted an MRI revealed a "nerve impingement." The planned treatment included methadone, and Dr. Curl had Ms. Burch agree to the terms of a "pain management contract" that specified the terms and conditions of treatment, including Dr. Curl's rules regarding refilling prescriptions. R. at 288. In January 2008, Dr. Curl referred Ms. Burch to a neurosurgeon at the spine center at St. John's Regional Health Center (Dr. Sami Khosyomn), who opined as follows:

> [Ms. Burch] is likely suffering from mechanical discogenic back pain caused by her degenerative changes. This condition is not helped any by the fact that the patient is obese and also is a heavy smoker. I did tell [her] that the best course of action for somebody like her was an effort to quit smoking and even weight loss over the next years to come. Surgical intervention is not indicated at this point. I did offer her a referral to the Pain Center for nonsurgical management and she reluctantly agreed to this.

R. at 345-46.

Meanwhile, Ms. Burch's claim for benefits was denied in August 2006, and a hearing was held on February 8, 2008. During the hearing she indicated that Dr. Khosyomn scheduled her for an MRI in early March, and the ALJ held the Record open for the MRI to be submitted. R. at 357. The ALJ also indicated Ms. Burch that submitting a Medical Source Statement from either Dr. Khosyomn or Dr. Curl would be

2

advisable, but was told that Dr. Curl would not provide one. R. at 358, 370-71. At the end of the hearing, Ms. Burch's attorney asked the ALJ if he would consider sending Ms. Burch for a consulting examination if a Medical Source Statement could not be obtained, and the ALJ stated he would "cross that bridge when we get to it." R. at 389.

During the hearing, Ms. Burch discussed the circumstances under which she left her prior jobs. She quit only her last job – as a housekeeper at a hotel – for reasons related to her medical condition. R. at 365-68. During her attorney's questioning, Ms. Burch described the pain in December 2003 as a six on a scale of one to ten, and currently as a nine on a scale of one to ten. R. at 371-74. She confirmed difficulty bending, reaching, or engaging in activity such as volleyball or other exercise, but denied any difficulty caring for her three-year old daughter. R. at 377-79.[2] She indicated that in December 2003 she was able to sit in a chair for twenty to thirty minutes, and from September 2005 to the date of the hearing could sit for only fifteen minutes. R. at 384-85. The ALJ elicited testimony from a vocational expert ("VE"). The VE testified that all of Ms. Burch's prior jobs required the ability to perform at the medium level of exertion, except for the cashier position, which required the ability to perform at the light level of exertion. R. at 387-88.

Unfortunately, Ms. Burch passed away two days after the hearing, due to reasons unrelated to her medical conditions. Thus, none of the medical records suggested by the ALJ were presented.

The ALJ issued a ruling in April 2008. He found Plaintiff's testimony to not be entirely credible for a variety of reasons, including (1) the paucity of complaints to her doctors, (2) the lack of objective medical evidence to support the severity of pain she described, (3) the relatively conservative treatment she received until just two months before the hearing, (4) her failure to follow her doctors' advice regarding smoking and weight loss, (5) the lack of any opinions from her doctors indicating she was as limited as she described, and (6) other inconsistencies in the Record. R. at 18-21. The ALJ determined Plaintiff could perform the full range of light work with no nonexertional

---

[2]Pages 378 through 383 are not in the correct order, but the are in the Record.

impairments. The ALJ then applied the Medical-Vocational Guidelines which, based on Ms. Burch's age, education, and exertional ability, directed a finding of "not disabled."

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

In appealing the denial of his late wife's claims, Mr. Burch first contends the ALJ erred in failing to adequately develop the Record. In particular, he contends there was not substantial evidence sufficient to permit a finding of Ms. Burch's residual functional capacity. The Court disagrees. It is true that Ms. Burch did not supply a Medical Source Statement from any physician, but there is no case or regulation mandating that one be in the file before an ALJ may assess a claimant's residual functional capacity. Furthermore, the claimant is responsible for establishing his or her functional capacity. E.g., Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010). The ALJ's obligation to fully develop the Record is not triggered unless a decision cannot be made because the records provided are inadequate, vague or ambiguous. E.g., Jones v. Astrue, 619 F.3d 963, 969 (8th Cir. 2010).

Here, the records permitted a decision to be made. It was not the decision the Burch's desired, and it was not based on all the evidence the Burch's may have wanted

4

the ALJ to consider – but Mr. Burch has not suggested the ALJ's decision was not supported by the evidence actually in the Record. The ALJ considered factors deemed relevant in evaluating a claimant's credibility and ascertaining a claimant's functional capacity. Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) (failure to follow doctor's instructions); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (lack of supporting medical records); Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994) (conservative nature of treatment prescribed); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted) (listing factors to consider in evaluating credibility). The ALJ found Ms. Burch did not suffer from any nonexertional impairments and was capable of performing a wide range of light work. These findings are supported by substantial evidence in the Record as a whole.

Mr. Burch's second argument focuses on the ALJ's findings regarding MS. Burch's functional capacity. He faults the ALJ for not incorporating a variety of restrictions, but none of them needed to be required. In some cases, the limitations in question depended upon crediting Ms. Burch's testimony; as noted, the ALJ was entitled to reject her accounts of her limitations. In other cases, there is no evidence supporting them. Finally, in some instances, there are simply no limitations to be included. For instance, Mr. Burch contends the ALJ failed to consider the effects of his wife's diabetes. However, the ALJ considered Ms. Burch's diabetes and noted it was largely controlled – and when it was not controlled it was because Ms. Burch was not compliant with her treatment. When controlled, diabetes did not impose any limitations on Ms. Burch's capabilities.

### III.  CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: March 31, 2011                    UNITED STATES DISTRICT COURT

5